### WEEDIN, Immigration Com'r, v. JEW SHUCK KWONG.

Circuit Court of Appeals, Ninth Circuit. June 24, 1929.

No. 5595.

Anthony Savage, U. S. Atty., and Paul D. Coles, Asst. U. S. Atty., and Tom De Wolfe, Asst. U. S. Atty., all of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellant.

John J. Sullivan and Michael F. Ward, both of Seattle, Wash., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

RUDKIN, Circuit Judge. This is an appeal from an order discharging from custody a Chinese applicant for admission to the United States, held for deportation under a warrant issued by the Secretary of Labor. The sufficiency of the testimony to warrant the order of deportation is the only question presented for our consideration.

On September 26, 1917, at Forth Worth, Tex., the alleged father of the appellee testified that he was born in Galveston, Tex.; that he was 28 years of age; that he made a trip to China in 1914, and while there married a woman named Wong Shee; that he and his wife lived together in China for about 13 months; that a son was born to them December 10, 1914, who was named Jew Silk Gong; that this son was about 4 or 5 months old when the witness returned to this country; that he would have brought his wife and son with him, but the son was too young, and he and his wife decided to wait awhile longer; that his father, his stepmother, his wife and son lived together in the home of his father in Mow Hong village, China, and that a half-sister named Yen Haw lived there also. On October 10, 1923, the alleged father testified that his father was still living; that he himself had three sons, Jew Shuck Goong, 10 years old, then an applicant for admission, Jew Shuck Gong, 9 years old, and Jew Shuck Jong, 1 year old; that his father occupied one of the rooms in the home in China; and

that no person lived there except his father, his wife and three sons.

At the same hearing, the son Jew Shuck Goong testified that he was born February 9, 1915, at the Lin Gong village, China; that the name of his father was Jew Toe Sing; that he did not know his other name; that the age of his father was 34; that the name of his mother was Wong Shee; that his paternal grandfather, named Jew Sing, was still living, and that he himself had two brothers, named Jew Shuck Gong, 9 years old, and Jew Shuck Jong, 1 year old.

On February 12, 1928, the alleged father again testified that the name of his father was Jew Sing; that he died in 1918; that he was not living in the house in China with his wife at the .time of his death; that he lived in the same village, but with his stepmother in a different house; that his family never lived in the same house with his father or stepmother; that he had no half-sister; that no person ever lived in the house with his wife and four children in China; that his reasons for testifying in his examination at Fort Worth that he only had one boy was that his father wanted to keep one of the boys in China, and did not want but one to come to the United States; that he sent the papers back to his wife for her and the oldest boy to come to this country, but, because he had said he only had the one boy, his wife refused to come.

The appellee himself testified, among other things, that he lived in China with his mother and brothers; that he never saw either of his paternal grandparents, and did not know their names; that he never heard whether they were living or dead; and that the marriage name of his father was Jew Doy Jun, a name never mentioned before.

The discrepancies to which we have referred, and other minor ones, did not relate to unimportant objects or incidents outside of the family and home which may not be observed at all or are soon forgotten. They related to facts connected with the immediate home life of the family, which were necessarily within the personal knowledge of the several witnesses, if the claim of relationship in fact existed. For this reason, we are of opinion that the testimony in support of the claim of relationship was so far discredited that the department was justified in finding that such claim was not satisfactorily established.

The order of discharge is therefore reversed, with directions to quash the writ of habeas corpus, and remand the appellee to the custody from whence he was taken.